**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,**
Appellee,

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

and

**United Steelworkers of America, AFL–CIO–CLC, and John McNulty, Defendants.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,**
Appellee.

Nos. 81–1283, 81–1307.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1981.

Decided Jan. 7, 1982.

Melissa Langa, E. E. O. C., Washington, D. C. (Leroy D. Clark, Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, Washington, D. C., on brief), for appellant.

Stephen T. Myking, Washington, D. C. (Gerald D. Skoning, Thomas E. Shirley, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on brief), for appellee.

Robert E. Williams, Douglas S. McDowell, Lorence L. Kessler, McGuiness & Williams, Washington, D. C., on brief, for amicus curiae Equal Employment Advisory Council.

Cynthia Wicker, Stephen Bokat, Stanley T. Kaleczyc, National Chamber Litigation Center, Washington, D. C., on brief, for amicus curiae Chamber of Commerce of the United States.

Before HAYNSWORTH, Senior Circuit Judge, and BUTZNER and HALL, Circuit Judges.

HAYNSWORTH, Senior Circuit Judge:

The question is the reach of the Pregnancy Discrimination Act.[1] If an employer provides medical insurance coverage for his employees, the Pregnancy Discrimination Act clearly prohibits any exclusion of, or special limitations upon, benefits payable with respect to pregnancy-related disabilities. The question before us is whether an employer which extends such medical insurance benefits to the spouses of employees may limit benefits payable with respect to a spouse's pregnancy-related disability. We conclude that such a limitation is a violation of the Act.

I.

Newport News Shipbuilding and Dry Dock Company provides a hospitalization and medical-surgical health insurance plan for its employees. Coverage is extended to their spouses and unmarried children between the ages of 14 days and 19 years. The benefits include the full cost of a semiprivate hospital room for up to 120 days and for other necessary hospital and medical expenses while hospitalized up to 100 per cent of the first $750 and 80 per cent of the excess for up to 120 days. The plan contains no special limitation upon benefits payable with respect to a pregnancy-related disability of a female employee. With respect to maternity benefits payable upon the delivery of a child of the spouse of a male employee, the plan provides full coverage for charges by physicians, but there is a $500 limitation upon the hospital charges in the absence of complications. To the extent that the hospital charges in connection with an uncomplicated delivery may exceed $500, therefore, a male employee receives less complete coverage of spousal disabilities than does a female employee.

A male employee filed a charge with the EEOC alleging discrimination against him arising out of the limitations upon hospital charges incurred in connection with a spouse's uncomplicated delivery of a child. The charge found support in the EEOC's Final Interpretive Guidelines on Sex Discrimination: Questions & Answers 21 and 22.[2] It is there stated that "if an employer's insurance program covers the medical

1. Section 701(k) of Title VII, 42 U.S.C.A. 2000e(k).

2. 44 Fed.Reg. 23807–808 (April 20, 1979).

expenses of spouses of female employees, then it must equally cover the medical expenses of spouses of male employees, including those arising from pregnancy-related conditions."

Prompted by the filing of that complaint, the company sought in the district court a declaratory judgment that the guidelines were unauthorized and an injunction against their implementation and enforcement. Later, the EEOC filed its complaint against the company alleging discrimination on the basis of sex in the company's provision of health benefits.

The district court ruled for the company in the first case holding that the Pregnancy Discrimination Act applied to employees, but not to spouses of employees. *See Newport News Shipbuilding and Dry Dock Company v. Equal Employment Opportunity Commission*, 510 F.Supp. 66 (E.D.Va.1981). The EEOC's complaint was then dismissed, and appeals in both cases were consolidated here.

## II.

The subsection added by the Pregnancy Discrimination Act to § 701 of Title VII of the Civil Rights Act of 1964, in pertinent part reads as follows:

"The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work...."

■ With emphasis upon the second clause of the subsection and particularly the words "for all employment-related purposes", the company contended, and the district court held, that the subsection applied only to employees and benefits payable with respect to their disabilities and not to benefits payable with respect to the disabilities of spouses of male employees. In the background, of course, is the Supreme Court's holding in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), which held that an employer, in providing disability insurance benefits for its employees, could exclude pregnancy-related disabilities. The Supreme Court had reasoned that classifications concerning pregnancy were not necessarily sex-based. The classification put pregnant women in one class and non-pregnant persons of both sexes in the other. The Supreme Court's decision in *Gilbert*, of course, triggered enactment of the Pregnancy Discrimination Act. The company, however, contends that the Congress intended no more than to circumvent the specific holding of the Supreme Court in *Gilbert* and construes the statute to extend benefits only to female employees and female applicants for employment. In any other context, including the context of this case, it is contended that the Supreme Court's decision in *Gilbert* remains unaffected.

The language of the statute is tortured by that construction. When an employer considers extension of medical benefits to the spouses of employees, it does so with an "employment-related purpose" just as it does when it considers the extension of such benefits to employees. Benefits would never be extended to spouses if the extension did not serve an employment-related purpose. The first clause of the subsection provides that the terms "because of sex" and "on the basis of sex" include because of, or on the basis of, pregnancy, childbirth and related medical conditions. By statutory definition those disabilities are within the meaning of the word "sex." There is nothing in the first clause to suggest that the definition will vary depending upon the employment status of the pregnant woman. The second clause reads quite harmoniously with the first, since coverage of spouses is employment-related and the statutory reference to the receipt of fringe benefits contains no intimation that benefits payable with respect to the disability of a spouse are excluded from the statute's reach. The

statutory reference to "ability or inability to work" denotes disability and does not suggest that the spouse must be an employee of the employer providing the coverage. In fact, the statute says "as other persons not so affected"; it does not say "as other *employees* not so affected."

The district court found support for its conclusion in some legislative history. There were references on the floor of each house to a purpose to extend protection to "working women" or "pregnant workers", but Senators Bayh and Cranston referred specifically to the problem presented here. Each thought that if an employer provides full coverage for spouses of female employees full coverage must be provided for the spouses of male employees.[3] Senate Report No. 95–331, 95th Cong., 1st Sess. 5–6 (1977) does contain a passage which suggests that the Senate Committee thought this an open question.

> It was suggested before this committee that an effect of Title VII, once this bill was enacted, would be to require that if the maternity costs of women employees were paid under a medical plan, the similar costs for wives of male employees would also have to be covered, whether or not the employer provided any other coverage for dependents. This suggestion is incorrect. This bill would not mandate that women dependents be compared with women employees, or that male employees with pregnant wives be compared with women employees themselves pregnant.

> On the other hand, the question of whether an employer who does cover dependents, either with or without additional cost to the employee, may exclude conditions related to pregnancy from that coverage is a different matter. Presumably because plans which provide comprehensive medical coverage for spouses of women employees but not spouses of male employees are rare, we are not aware of any Title VII litigation concerning such plans. It is certainly not this committee's desire to encourage the insti-

tution of such plans. If such plans should be instituted in the future, the question would remain whether, under Title VII, the affected employees were discriminated against on the basis of their sex as regards the extent of coverage for their dependents.

If the Senate Committee thought the question an open one, however, that fact provides no platform for the company's contention that the question should be resolved upon a consideration of the reach of Title VII prior to enactment of the Pregnancy Discrimination Act. Upon enactment, the new subsection became an integral part of Title VII. If the Senate Committee thought that the question would be resolved in subsequent litigation, the statute to be applied surely would be the statute as it existed at the time the operative facts developed.

We cannot read the statute so narrowly as to overturn the specific holding in *Gilbert* without affecting the reasoning upon which that holding was based. The language of the new statute strongly indicates a purpose to equate pregnancy, childbirth and related medical conditions with sex. Distinctions based on pregnancy, the Congress said, are distinctions based on sex.

█ Since the company's health insurance plan contains a distinction based on pregnancy that results in less complete medical coverage for male employees with spouses than for female employees with spouses, it is impermissible under the statute.

REVERSED AND REMANDED.

K. K. HALL, Circuit Judge, dissenting:

The majority overlooks a critical phrase in the Pregnancy Discrimination Act. The Act provides, in pertinent part:

> "[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes . . . as other persons not so affected *but similar in their ability or inability to work . . . .*" [Emphasis added.]

---

**3.** *See* 123 Cong.Rec. 29642 (1977); 123 Cong. Rec. 29663 (1977).

**452**

To determine whether a pregnant woman is being treated the same as some other person who has the similar ability or inability to work, the pregnant woman, by logical necessity, must also be an employee. To hold otherwise is to simply ignore the language of the Act.

Regardless of one's personal feelings on the matter, pregnancy-based classifications are lawful except to the extent that *General Electric v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) has been limited by the Act. Had Congress intended to completely eviscerate *Gilbert*, it could have easily done so without references to a woman's ability or inability to work.

For these reasons, I respectfully dissent.